IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-62611

MICHAEL TIRATURIAN and PETER )
VISKOVATYKH, )
)
    Plaintiffs, )
)
v. )
)
MOSHE OZ and ELDAD OZ, )
)
    Defendants. )
)

COMPLAINT AND JURY DEMAND

Plaintiffs Michael Tiraturian and Peter Viskovatykh sue Defendants Moshe Oz and Eldad Oz and state:

PARTIES

1.    Plaintiff Michael Tiraturian is a citizen of the United States who is domiciled in Florida. Tiraturian owns 25.5 percent of ME Technology, Inc., d/b/a CAA USA, a New York corporation with its principal place of business in Florida.

2.    Plaintiff Peter Viskovatykh is a citizen of the United States who is domiciled in Florida. Viskovatykh owns 25.5 percent of CAA USA.

3.    Upon information and belief, Defendant Moshe Oz is a citizen of Israel who is domiciled in Israel. Moshe Oz owns 24.5 percent of CAA USA and formerly owned 50 percent of the company.

4.    Upon information and belief, Defendant Eldad Oz is a citizen of Israel who is domiciled in Israel. Eldad Oz owns 24.5 percent of CAA USA and formerly owned 100 percent of the company.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiffs are citizens of Florida and Defendants are citizens of Israel, a foreign state, and the amount in controversy is in excess of $75,000.

6. This Court has personal jurisdiction over Defendants because they have committed a tortious act within this State.

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

8. CAA Industries, Ltd. ("CAA Israel") is a manufacturer of firearms accessories, including pistol-to-carbine conversion kits.

9. Between December 15, 2010, and approximately January 15, 2015, Moshe Oz and/or his brother, Eldad, owned 100 percent of CAA Israel.

10. Three years earlier, on August 20, 2007, Eldad Oz founded CAA USA to serve as the exclusive distributor of CAA Israel's products in the United States. Upon information and belief, Eldad Oz owned 100 percent of CAA USA.

11. From the founding of CAA USA, it operated with CAA Israel as a single enterprise known simply as CAA. CAA USA served as the exclusive distributor of CAA Israel's products in the United States, and the two CAA entities shared all relevant intellectual property.

12. In or around 2014, Moshe Oz and Eldad Oz entered into negotiations with Sky of Blue PTE Ltd. ("Sky of Blue") to sell 51 percent of each of CAA Israel and CAA USA to Sky of Blue.

13. Tiraturian and Viskovatykh—each residing in Florida at all relevant times—represented Sky of Blue in connection with the proposed transaction.

14. In or around January 2015, Sky of Blue entered into stock purchase agreements to acquire 51 percent of the shares of CAA Israel, CAA USA, and Stellcon USA, Inc., a CAA USA affiliate that holds the licenses required for CAA USA's operations.

15. Sky of Blue agreed to pay $8 million for 51 percent of CAA. The purchase price was allocated with $5 million to the purchase of 51 percent of CAA Israel, $2.6 million to the purchase of 51 percent of CAA USA, and $400,000 to the purchase of 51 percent of Stellcon USA, Inc. Tiraturian was directly involved in the due diligence and negotiation of the purchase on behalf of Sky of Blue.

16. Virtually all of CAA USA's value was derived from its exclusive distribution agreement with CAA Israel and its joint ownership of CAA's intellectual property.

17. Neither Moshe Oz nor Eldad Oz disclosed that CAA Israel could—according to them—terminate the exclusive distribution agreement with CAA USA at will.

18. Neither Moshe Oz nor Eldad Oz disclosed that, according to them: (1) CAA Israel and Command Arms Accessories, LLC—a company wholly owned by Moshe Oz and Eldad Oz—owned 100 percent of CAA's intellectual property, (2) CAA USA had (and has) no rights in CAA's intellectual property, (3) CAA USA's right to use CAA's intellectual property was contingent upon an oral license or other permission from CAA Israel, and (4) CAA Israel could revoke its oral license or other permission concerning CAA's intellectual property at any time.

19. Sky of Blue consummated its purchase of 51 percent of CAA Israel (and later transferred its 51 percent to Comaren Enterprises Corp., Sky of Blue's parent company), but not its purchase of 51 percent of CAA USA and Stellcon USA, Inc.

20. Instead, Sky of Blue assigned its rights to the acquisition of 51 percent of CAA USA and Stellcon USA, Inc., to Tiraturian and Viskovatykh.

21. Subsequent to this assignment, Tiraturian and Viskovatykh conducted additional negotiations with Moshe Oz and Eldad Oz.  Tiraturian and Viskovatykh conducted such negotiations from within the Southern District of Florida.

22. Tiraturian and Viskovatykh consummated their purchase of 51 percent of CAA USA and Stellcon USA, Inc., on or about December 19, 2016.

23. Rather than transfer the required 51 percent of CAA USA and Stellcon USA, Inc., to Tiraturian and Viskovatykh directly, Eldad Oz transferred 50 percent of CAA USA and Stellcon USA, Inc., to Moshe Oz.  Each of Moshe Oz and Eldad Oz then transferred 12.75 percent of CAA USA and Stellcon USA, Inc. (a total of 25.5 percent of each entity) to Tiraturian and 12.75 percent of CAA USA and Stellcon USA, Inc. (again a total of 25.5 percent) to Viskovatykh.

24. After these transactions, Tiraturian and Viskovatykh each owned 25.5 percent of CAA USA and Stellcon USA, Inc., and Moshe Oz and Eldad Oz each owned 24.5 percent of CAA USA and Stellcon USA.

25. At no point prior to the consummation of the transaction did Moshe Oz or Eldad Oz disclose to Tiraturian or Viskovatykh that CAA Israel could—according to them—terminate the exclusive distribution agreement with CAA USA at will.

26. At no point prior to the consummation of the transaction did Moshe Oz or Eldad Oz disclose to Tiraturian or Viskovatykh that, according to them: (1) CAA Israel and Command Arms Accessories, LLC, own 100 percent of CAA's intellectual property, (2) CAA USA had no rights in CAA's intellectual property, (3) CAA USA's right to use CAA's intellectual property

was contingent upon an oral license or other permission from CAA Israel, and (4) CAA Israel could revoke its oral license or other permission concerning CAA's intellectual property at any time.

27.     After Sky of Blue purchased 51 percent of CAA Israel and assigned said interest to Comaren Enterprises Corp., and after Tiraturian and Viskovatykh purchased 51 percent of CAA USA and Stellcon USA, Inc., the two entities continued to operate jointly as CAA.

28.     In 2015, CAA Israel and CAA USA jointly undertook a major rebranding campaign to improve sales in the United States and jointly developed a new website.  CAA USA contributed tens of thousands of dollars to both the rebranding and the new website, and Tiraturian participated extensively in the rebranding campaign.

29.     CAA Israel and CAA USA continued to operate jointly as CAA until approximately May 2018.

30.     Around that time, CAA Israel began shipping products late to CAA USA and missed certain orders entirely.  The quality of CAA Israel's products also began to deteriorate.

31.     Additionally, CAA Israel began to experience cash flow issues as a result of a series of reckless and unauthorized decisions made by Moshe Oz, the president of CAA Israel.

32.     In an attempt to fix the problems he had created at CAA Israel, Moshe Oz demanded that CAA USA begin prepaying its orders from CAA Israel, rather than 45 days after shipment, as had been the case previously.  The change threatened to cause significant cash flow problems for CAA USA but did not address CAA Israel's shipping delays or quality issues.  CAA USA refused to accept the change in payment terms.

33.     Also in 2018, CAA Israel began distributing its products in the United States through a new distributor, YRS Inc., unilaterally terminating CAA USA's exclusive

distributorship of CAA Israel's products in the United States—one of the two drivers of CAA USA's value.

34. On or around June 5, 2019, counsel for CAA Israel sent Tiraturian and Viskovatykh a letter in which CAA Israel asserted that CAA USA had been allowed to use CAA's intellectual property in the United States "by permission of" CAA Israel and purported to "revoke[] and terminate[] any permission or implied license" previously granted to CAA USA to use CAA's intellectual property.

35. At the direction of Moshe Oz, CAA Israel then sued CAA USA for violation of its alleged trademark and other intellectual property rights.

36. All conditions precedent, if any, to this lawsuit have been met, waived or otherwise satisfied.

COUNT I
(Fraud in the Inducement Against Moshe Oz)

37. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 36 as if set forth herein.

38. Moshe Oz now claims that CAA Israel could terminate its exclusive distribution agreement with CAA USA at will.

39. Moshe Oz now claims that CAA USA has no rights in CAA's intellectual property, including the mark "COMMAND ARMS ACCESSORIES," the mark "CAA," a lion head mark developed and used by both CAA Israel and CAA USA, a composite mark of CAA and the lion head developed and used by both CAA Israel and CAA USA, a digital design pattern mark developed and used by both CAA Israel and CAA USA, and an alleged "Micro" mark.

40. When Tiraturian and Viskovatykh acquired 51 percent of CAA USA and Stellcon USA, Inc., virtually all of CAA USA's value was derived from its exclusive distribution agreement with CAA Israel and its joint ownership of CAA's intellectual property.

41. Before Tiraturian and Viskovatykh acquired 51 percent of CAA USA and Stellcon USA Inc., Moshe Oz did not disclose that CAA Israel could—according to him—terminate the exclusive distribution agreement with CAA USA at will.

42. Before Tiraturian and Viskovatykh acquired 51 percent of CAA USA and Stellcon USA, Inc., Moshe Oz did not disclose that: (1) CAA Israel and Command Arms Accessories, LLC, allegedly own 100 percent of CAA's intellectual property, (2) CAA USA allegedly has no rights in CAA's intellectual property, (3) CAA USA's right to use CAA's intellectual property was allegedly contingent upon an oral license or other permission from CAA Israel, and (4) CAA Israel could allegedly revoke its oral license or other permission concerning CAA's intellectual property at any time.

43. Moshe Oz knew that, in the absence of disclosure of this information, the information Tiraturian and Viskovatykh had regarding CAA USA and Stellcon USA, Inc., was false.

44. Moshe Oz intended that Tiraturian and Viskovatykh would rely on his omissions.

45. Tiraturian and Viskovatykh would not have acquired 51 percent of CAA USA and Stellcon USA, Inc., if they had known that CAA Israel could terminate its exclusive distribution agreement with CAA USA unilaterally and at will, as Moshe Oz now claims.

46. Tiraturian and Viskovatykh would not have acquired 51 percent of CAA USA and Stellcon USA, Inc., if they had known that (1) CAA Israel and Command Arms Accessories, LLC, allegedly own 100 percent of CAA's intellectual property, (2) CAA USA allegedly has no

rights in CAA's intellectual property, (3) CAA USA's right to use CAA's intellectual property was allegedly contingent upon an oral license or other permission from CAA Israel, and (4) CAA Israel could allegedly revoke its oral license or other permission concerning CAA's intellectual property at any time, as Moshe Oz now claims.

47. Tiraturian and Viskovatykh justifiably relied on the information provided to them—and not provided to them—by Moshe Oz, from whom they each purchased a percentage of CAA USA and Stellcon USA, Inc.

48. Assuming, for the sake of this complaint, that Moshe Oz's claims regarding the distribution agreement and CAA's intellectual property are true, CAA USA and Stellcon USA, Inc., were virtually worthless at the time of purchase, and Tiraturian and Viskovatykh each suffered injury in justifiable reliance on Moshe Oz's omissions.

WHEREFORE, Plaintiffs demand judgment in favor of Tiraturian and Viskovatykh, and against Moshe Oz, awarding Tiraturian and Viskovatykh no less than $3 million in general damages and/or special damages, plus punitive damages, costs, attorney's fees, and such other and further relief as the Court deems just and proper.

## COUNT II
(Fraud in the Inducement Against Eldad Oz)

49. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 36 as if set forth herein.

50. Eldad Oz now claims that CAA Israel could terminate its exclusive distribution agreement with CAA USA at will.

51. Eldad Oz now claims that CAA USA has no rights in CAA's intellectual property, including the mark "COMMAND ARMS ACCESSORIES," the mark "CAA," a lion head mark developed and used by both CAA Israel and CAA USA, a composite mark of CAA and the lion

head developed and used by both CAA Israel and CAA USA, a digital design pattern mark developed and used by both CAA Israel and CAA USA, and an alleged "Micro" mark.

52. When Tiraturian and Viskovatykh acquired 51 percent of CAA USA and Stellcon USA, Inc., virtually all of CAA USA's value was derived from its exclusive distribution agreement with CAA Israel and its joint ownership of CAA's intellectual property.

53. Before Tiraturian and Viskovatykh acquired 51 percent of CAA USA and Stellcon USA Inc., Eldad Oz did not disclose that CAA Israel could—according to him—terminate the exclusive distribution agreement with CAA USA at will.

54. Before Tiraturian and Viskovatykh acquired 51 percent of CAA USA and Stellcon USA, Inc., Eldad Oz did not disclose that: (1) CAA Israel and Command Arms Accessories, LLC, allegedly own 100 percent of CAA's intellectual property, (2) CAA USA allegedly has no rights in CAA's intellectual property, (3) CAA USA's right to use CAA's intellectual property was allegedly contingent upon an oral license or other permission from CAA Israel, and (4) CAA Israel could allegedly revoke its oral license or other permission concerning CAA's intellectual property at any time.

55. Eldad Oz knew that, in the absence of disclosure of this information, the information Tiraturian and Viskovatykh had regarding CAA USA and Stellcon USA, Inc., was false.

56. Eldad Oz intended that Tiraturian and Viskovatykh would rely on his omissions.

57. Tiraturian and Viskovatykh would not have acquired 51 percent of CAA USA and Stellcon USA, Inc., if they had known that CAA Israel could terminate its exclusive distribution agreement with CAA USA unilaterally and at will, as Eldad Oz now claims.

58. Tiraturian and Viskovatykh would not have acquired 51 percent of CAA USA and Stellcon USA, Inc., if they had known that (1) CAA Israel and Command Arms Accessories, LLC, allegedly own 100 percent of CAA's intellectual property, (2) CAA USA allegedly has no rights in CAA's intellectual property, (3) CAA USA's right to use CAA's intellectual property was allegedly contingent upon an oral license or other permission from CAA Israel, and (4) CAA Israel could allegedly revoke its oral license or other permission concerning CAA's intellectual property at any time, as Eldad Oz now claims.

59. Tiraturian and Viskovatykh justifiably relied on the information provided to them—and not provided to them—by Eldad Oz, from whom they each purchased a percentage of CAA USA and Stellcon USA, Inc.

60. Assuming, for the sake of this complaint, that Eldad Oz's claims regarding the distribution agreement and CAA's intellectual property are true, CAA USA and Stellcon USA, Inc., were virtually worthless at the time of purchase, and Tiraturian and Viskovatykh each suffered injury in justifiable reliance on Eldad Oz's omissions.

WHEREFORE, Plaintiffs demand judgment in favor of Tiraturian and Viskovatykh, and against Eldad Oz, awarding Tiraturian and Viskovatykh no less than $3 million in general damages and/or special damages, plus punitive damages, costs, attorney's fees, and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

Gunster, Yoakley & Stewart, P.A.
Attorneys for Plaintiffs Michael Tiraturian and Peter Viskovatykh

By   *s/ William K. Hill*
William K. Hill & Timothy J. McGinn
Florida Bar Nos. 747180 & 1000377
600 Brickell Avenue, Suite 3500
Miami, Florida 33131
Tel.: 305-376-6000
Fax: 305-376-6010
whill@gunster.com
tmcginn@gunster.com